Taxes; income tax; investment tax credit; Merchant Marine Act of 1936; effect of qualified withdrawals on the amount of investment tax credit available on a qualified vessel; investment tax credit recapture. — On February 22, 1980 the court entered the following order:
Before Kashiwa, Judge, Presiding, Kunzig and Bennett, Judges.
This is an action[1] for the recovery of an alleged overpayment by Bert and Eileen Gilman of federal income *662 taxes in the amount of $7,502 for the year 1974, plus assessed and statutory interest thereon.[2]
At the beginning of 1974, plaintiffs owned 250 shares of the common stock of Royal Viking, Inc., a Subchapter S corporation.[3] In December 1974, plaintiffs sold 18 of their shares. Throughout all of 1974, Royal Viking had a total of 1,500 shares of common stock issued and outstanding.
In March 1974, Royal Viking acquired and placed into service a fishing vessel, the Pacific Viking. The Pacific Viking was a "qualified vessel” within the meaning of section 607 of the Merchant Marine Act of 1936, as amended in 1970, (MMA) 46 U.S.C. § 1177 (1976). Although there is some question as to how much this vessel cost, Royal Viking paid a portion of the purchase price directly (hereinafter the "down payment”) and financed the remainder through a loan secured by a mortgage on the vessel. Royal Viking subsequently made payments in satisfaction of the principal amount of the loan. Both the down payment and payments of loan principal were made out of Royal Viking’s "ordinary income account,” as defined in MMA section 607(e). In addition, the down payment was a "qualified withdrawal” of the type described in MMA section 607(f)(1)(A), the effect of which is described in MMA section 607(g)(2); and the payments in satisfaction of the loan principal were MMA section 607(f)(1)(C) payments, the effect of which is detailed in MMA section 607(g)(4).[4]
*663 In computing their federal income tax liability for 1974, plaintiffs initially assumed that the stock sale resulted in $400 of investment tax credit recapture under section 47 of the Internal Revenue Code of 1954[5] and that the placing in service of the Pacific Viking did not entitle them to an investment tax credit.[6] Plaintiffs then paid the resulting tax.
Plaintiffs subsequently filed an amended return for 1974 in which they claimed there was no recapture and that they were entitled to a $7,102 investment tax credit.[7] In determining the credit available on the Pacific Viking, plaintiffs did not take the MMA section 607(g)(2) and (4) basis reductions into account in determining the vessel’s tax basis.
The alleged erroneous reporting of $400 of recapture, coupled with the failure to take $7,102 of credit, accounted for the alleged $7,502 overpayment; and plaintiffs filed a claim for refund of this amount. The claim was denied.
This case is before this court on the parties’ cross motions for summary judgment. Plaintiffs ask us to hold that the 1974 stock sale did not result in section 47 recapture and that in determining the investment tax credit available on the Pacific Viking, the MMA section 607(g)(2) and (4) basis reductions are not to be taken into account in determining the vessel’s tax basis. Defendant concedes that the stock sale did not cause section 47 recapture but asks us to hold that the MMA section 607(g)(2) and (4) basis reductions are to be taken into account in determining the amount of the investment tax credit.
*664 Defendant’s concession makes it unnecessary for us to further discuss the section 47 recapture issue. We, accordingly, grant plaintiffs’ motion on this issue and hold that erroneously reporting this recapture caused a $400 overpayment of 1974 taxes. The only issue thus remaining for decision is determining whether the MMA section 607(g)(2) and (4) basis reductions affect the amount of investment tax credit available.
Two recent decisions of this court, Oglebay Norton Co. v. United States, 221 Ct. Cl. 749, 610 F.2d 715 (1979), and its companion case, O. L. Schmidt Barge Lines, Inc. v. United States, 221 Ct. Cl. 793, 610 F.2d 723 (1979), considered this exact issue on facts similar to these. Both cases involved qualified withdrawals from an ordinary income account. The only difference was that these two cases involved reconstruction of qualified vessels, whereas this controversy involves the acquisition of a qualified vessel. In Oglebay, the full cost of reconstruction was paid with a cash payment qualifying as an MMA section 607(f)(1)(A) withdrawal, the effect of which was described in MMA section 607(g)(2). In O. L. Schmidt, the cost was paid partially through a cash payment qualifying as an MMA section 607(f)(1)(A) withdrawal and partially with a loan, the principal of which was paid off with MMA section 607(f)(1)(C) withdrawals, the effects of which were set out in MMA sections 607(g)(2) and (4), respectively. Considered together, these cases held that for purposes of determining the investment tax credit available with respect to such reconstructed vessels, the MMA section 607(g)(2) and (4) basis reductions were not to be taken into account.
Since the MMA, to the extent here relevant, accords identical treatment to acquisition and reconstruction of qualified vessels, what we held in Oglebay and Schmidt is equally applicable here. Relying on Oglebay and Schmidt, we therefore hold that in determining the amount of investment tax credit available on the Pacific Viking, the MMA section 607(g)(2) and (4) reductions are not to be taken into account in determining the vessel’s tax basis. We, thus, grant plaintiffs’ motion for summary judgment on this issue and deny defendant’s motion for summary judgment.
It is Therefore Ordered that plaintiffs’ motion for summary judgment on both issues is granted and defend *665 ant’s motion for summary judgment is denied. The amount of recovery will be determined by subsequent proceedings pursuant to Rule 131(c).
On June 13,1980 the court ordered that judgment be and is entered for plaintiffs for $7,502, plus statutory interest.

 This case was consolidated for purposes of argument, and the order issued concurrently, with Ness v. United States, Ct. Cl. No. 235-78. In reaching our decision, we have considered the arguments presented by counsel in both cases.

 Bert and Eileen Gilman were husband and wife, and filed a joint federal income tax return, during all periods relevant to this proceeding. For the sake of convenience, Bert and Eileen Gilman will hereafter be collectively referred to as "plaintiffs.”

 A Subchapter S corporation is a corporation which meets the requirements of section 1371 of the Internal Revenue Code of 1954 and makes the election required by section 1372.

 MMA section 607(f) provides in relevant part as follows:
"(f)(1) A qualified withdrawal from the fund is one made in accordance with the terms of the agreement but only if it is for:
"(A) the acquisition, construction, or reconstruction of a qualified vessel, [or]
"(C) the payment of the principal on indebtedness incurred in connection with the acquisition, construction or reconstruction of a qualified vessel * *
MMA section 607(g) provides in relevant part as follows:
"(g)(2) If any portion of a qualified withdrawal for a vessel * * * is made out of the *663 ordinary income account, the basis of such vessel * * * shall be reduced by an amount equal to such portion.
"(4) If any portion of a qualified withdrawal to pay the principal on any indebtedness is made out of the ordinary income account * * *, then an amount equal to the aggregate reduction which would be required by paragraph^] (2) * * * if this were a qualified withdrawal for a purpose described in such paragraph^] shall be applied, in the order provided in joint regulations, to reduce the basis of vessels * * * owned by the person maintaining the fund.” * * *

 Except as otherwise expressly indicated, all subsequent statutory references are to the Internal Revenue Code of 1954, as amended.

 The investment tax credit is set out at sections 38 and 46-50.

 Although the Pacific Viking was owned and placed in service by Royal Viking, Royal Viking was a Subchapter S corporation. This means that any investment tax credit available on the Pacific Viking would be taken by the shareholders of the corporation, not by Royal Viking itself. Section 48(e).